FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 12, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LESLIE BARGEL,<br><br>    Plaintiff,<br><br>    v.<br><br>PRINCIPAL LIFE INSURANCE COMPANY, a foreign insurer,<br><br>    Defendant. | No. 2:18-cv-00223-SAB<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Before the Court is Defendant's Second Motion for Summary Judgment, ECF No. 23. The motion was heard without oral argument. Plaintiff is represented by Robb Grangroth. Defendant is represented by Patrick Cronin.

Previously, the Court denied Defendant's Motion for Summary Judgment, finding questions of material fact existed regarding whether JoAnn Bargel made the requisite payments or whether Defendant was justified in terminating her policy. ECF No. 19. After the Order was issued, Defendant sought discovery on the amount of payment. Defendant now asserts and Plaintiff does not deny that $2,000, not $4,000, was paid on the policy in September 2017. ECF No. 25. As a result, Defendant moves for summary judgment.

**Motion Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1**

matter of law." Fed. R. Civ. P. 56(a). Fed. R. Civ. P. 56(c). There is no genuine issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The moving party has the initial burden of showing the absence of a genuine issue of fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party meets its initial burden, the non-moving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

In addition to showing there are no questions of material fact, the moving party must also show it is entitled to judgment as a matter of law. *Smith v. Univ. of Wash. Law Sch.*, 233 F.3d 1188, 1193 (9th Cir. 2000). The moving party is entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of a claim on which the non-moving party has the burden of proof. *Celotex*, 477 U.S. at 323. The non-moving party cannot rely on conclusory allegations alone to create an issue of material fact. *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993).

When considering a motion for summary judgment, a court may neither weigh the evidence nor assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

**Interpretation of Insurance Contract**

A federal court sitting in diversity looks to the forum state's choice of law rules to determine the controlling substantive law. *Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002). Under Washington law, insurance policies are construed as contracts, and interpretation of policies is a matter of law. *State Farm Gen. Ins. Co. v. Emerson*, 102 Wash.2d 477, 480 (1984). Policies are to "be given a fair, reasonable, and sensible construction" that comports with how the average purchaser of insurance would view the policy. *Grange Ins. Co. v. Brosseau*, 113

Wash.2d 91, 95 (1989) (quotation omitted).

The court must enforce clear and unambiguous policy language as written; it may not modify the policy or create ambiguity where none exists. *Quadrant Corp. v. Am. States Ins. Co.*, 154 Wash.2d 165, 171 (2005). The expectations of the insured cannot override the plain language of the contract. *Id*. at 172. Any ambiguities are construed in favor of the insured; but a clause is ambiguous only "when, on its face, it is fairly susceptible to two different interpretations, both of which are reasonable." *Id*. at 171 (citation omitted).

**Background Facts**

This action is a lawsuit for benefits under a life insurance policy that was issued to Plaintiff's mother, JoAnn Bargel, in 1990. Plaintiff is the beneficiary. JoAnn Bargel died shortly after Defendant denied her application for reinstatement after it terminated the policy for failure of payment.

The type of life insurance that was purchased by Plaintiff's mother was a "Flexible Premium Universal Life" policy. ECF No. 23. Plaintiff purchased her policy in 1990. The Data Page had the following explanation:

> *1 If sufficient premiums are paid, this policy provides life insurance protection on the insured until the maturity date, which is the policy anniversary following the birthday on which the insured attains age 95. You may have to pay other than the planned periodic premium shown above to keep this policy and coverage in force to that date, and to keep any additional benefit riders in force.

ECF No. 23.

The policy contained provisions relating to premium payments and maintaining coverage under the policy:

> "**Premium Payments and Reinstatement**"
> Your Policy is effective and your first premium is due on the policy date. After that, premiums may be paid at any time while this policy is in force and in any amounts subject to the Premium Payment Limits provision. We will give you a receipt on request.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 3**

"**Planned Periodic Premiums**"
You may elect to pay premiums by monthly preauthorization withdrawal. You may also elect to pay premiums on an annual, semi-annual, or quarterly basis. In this event we will send you reminder notices of the amount and frequency of your planned periodic premiums as selected in your application. These notices serve only as a reminder of your preference. Premiums are to be sent to the address we provide in reminder notices. You may request a change in the amount and frequency of your planned periodic premiums by notifying us in writing. We may limit the amount of any increase or decrease. We will provide details of such limits upon request. If you do not make a planned periodic premium payment or additional premium payments and the net surrender value is less than the monthly deduction due on the monthly date, the Grace Period provision will then apply.

**"Premium Payment Limits"**
To keep this policy in force you need to satisfy the premium requirements described in the Grace Period provision.

You may choose to make premium payments that are greater than the planned periodic premium. However, we will refund any premiums that would disqualify this policy as "life insurance" as defined in the Internal Revenue Code, as amended . . .

**"Paid Up Benefit"**
If you do not make a planned periodic premium payment or additional premium payments this policy will not terminate unless the net surrender value is not sufficient for the monthly deduction due on the monthly date. The Grace Period provision will then apply.

**"Grace Period"**
If the net surrender value on any monthly date is less than the monthly deduction a 61 day grace period will begin. However, we guarantee this policy will stay in force during the first 5 policy years when (A-B) is greater than or equal to (C x D), where;
   A. Is the sum of premiums paid;
   B. Is the sum of all existing loans, loan interest, partial surrenders and transaction charges
   C. Is the minimum premium as shown on the current data page; and

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~** 4

      D. Is the number of months since the policy date.

A notice will be sent to you and any assignee at the start of any grace period. It will be mailed to you and any assignee at the last post office address known to us.

If by the end of a grace period we do not receive an amount sufficient to allow at least 3 monthly deductions, your policy terminates as of the date the first unpaid monthly deduction was due.

If the insured dies during a grace period, we will pay the death proceeds to the beneficiary.

**"Termination"**
This policy terminates when any one of the following events occurs:
1. You surrender your policy for cash.
2. The Insured dies;
3. The policy maturity date is reached; or
4. The grace period ends as described in the Grade Period provision.

**"Reinstatement"**
If this policy terminates as a result of an unpaid monthly deduction as described in the Grace Period provision, you may reinstate it while the insured is alive provided that:
1. Not more than 3 years have elapsed since the policy terminated;
2. You supply evidence which satisfies us that the insured is insurable under our underwriting rules then in effect; and
3. You make a payment large enough to make monthly deductions for at least 3 months.

ECF No. 23 at 25-31.

      Defendant sent Plaintiff a Life Insurance Policy Annual Statement that was prepared on June 4, 2017. ECF No. 28, Ex. B. It indicated the net Surrender Value was $790.65. *Id.* The Death Benefit was $80,000 and the Planned Annual Premium was $4,000. *Id.* It also included a chart that explained the impact of the variable rates on the expected length of coverage. *Id*.

      In June 2017, Defendant sent Plaintiff a Premium reminder on June 24, 2017. ECF No. 9, Ex. D. It indicated the Annual premium was $4,000.00. This

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 5**

reminder also included the following language:

**Important information**

To maintain your desired coverage, it is important to make timely payments. While your policy provides flexibility in the amount, frequency, and duration of premium payments when you need it, these changes can impact your policy values and guarantees. See your policy for further details.

*Id.*

Plaintiff made a $2000 payment in September. The $2000 payment provided coverage through October 2017. By November 2017, JoAnn Bargel's policy had a net surrender value of $36.75, but the monthly policy charge due on that date was $532.72. ECF No. 9-2. Defendant then mailed notices to JoAnn Bargel's home mailing address on November 4, 2017 and December 4, 2017, informing her that her policy was in Grace Period and would terminate on 1/6/2018 if the payment amount of $1,707.78 was not received. ECF No. 9-2, Exs. E, F. Plaintiff indicates her mother never received these notices because her mailbox had been stolen. After the policy expired, she attempted to make the $1707.78 payments by sending in multiple money orders. Defendant returned the payments due to its policy of not accepting money orders over $500 from institutions other than the U.S. Postal Service or a bank or credit union domiciled in the United States. ECF No. 9-2.

When the payment was not timely made and the policy was terminated, JoAnn Bargel applied for reinstatement; that application was sent to the underwriting department and was denied based on her health conditions at that time.

**Analysis**

Plaintiff argues that the premium owed in June 2017 was $4,000 for the year, and the "cost of insurance" should have been calculated by dividing that fixed premium by 12 months; thus, the $2,000 payment made in September, 2017, when added to the "accumulated value" balance should have kept the policy in effect for six months. She asserts the terms of the policy allowed for premium

payments to be made at any time while the policy was in force and she could have paid on an annual, semi-annual, or quarterly basis. She maintains she made a semi-annual payment or 1/2 of the stated $4,000 payment, which should have covered her insurance for six months. Thus, the payment of $1,707.78 was improperly rejected in January 28, 2018. She states she was never notified that the payment was increasing, nor did she sign an authorization to increase the premium as she had done in 2013. She argues the failure to provide her with the total and accurate premium for the new policy without obtaining her consent created a misleading and deceptive act supporting her bad faith claim.

Plaintiff's arguments are not supported by the terms of the policy. The $4,000 was not a premium that was set by Defendant. Rather, it was the premium chosen by Plaintiff. The policy is clear that this is a "flexible premium" policy in which the insured bears the risk or responsibility of making sure the payments are enough to insure coverage. The terms of the policy define the cost of insurance, and it is not a fixed yearly premium divided by 12 months. Instead, when the accumulated value is less than the cost of insurance in any given month, the insured must pay more to prevent a grace period, irrespective of whether it exceeds their original planned premium. On Nov. 4, 2017, the policy value was $36.75, which was not enough to cover the month's cost of insurance and so the policy entered into a grace period requiring additional payments. Plaintiff failed to make those payments.

Nor do Plaintiff's arguments bear out in history. Throughout the policy, JoAnn Bargel voluntarily made increased payments when her planned periodic payments were not enough to cover the cost of the insurance. She increased the planned premium in 2007 and again in 2013. This indicates that JoAnn Bargel understood her responsibilities under the policy, and that the annual policy statements provided by Defendant were not misleading or deceptive.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 7**

Moreover, there is nothing in the record to support Plaintiff's breach of contact claim. The record establishes that Defendant followed the terms of the policy in providing the notices and terminating the policy. Since Defendant did not breach any contract or violate any duty when JoAnn Bargel's policy lapsed in accordance with the terms of the policy contract, Plaintiff's remaining claims—bad faith, violation of the Consumer Protection Act or the Insurance Fair conduct Act—fails as well.

Even though the results appear to be harsh, JoAnn Bargel was notified in June that she was required to make the $4000 payment. If she had, she would have had coverage prior to her death. Plaintiff is asking the Court to rewrite the terms of the contract and interpret the contract as a fixed premium contract, but the clear terms of the insurance policy prevent it from doing so.

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendant's Second Motion for Summary Judgment, ECF No. 23, is **GRANTED**.

2. All pending motions are **DENIED**, as moot.

3. The December 9, 2019 bench trial is **STRICKEN**.

4. The District Court Executive is directed to enter judgment in favor of Defendant and against Plaintiff.

**IT IS SO ORDERED.** The Clerk of Court is directed to enter this Order and forward copies to counsel.

**DATED** this 12th day of November 2019.



Stanley A. Bastian
United States District Judge

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 8